IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 786 CHALLENGER ST. LLC, | ) |
| Plaintiff, | ) ) ) |
| -against- | ) ) |
| BOMBARDIER AEROSPACE CORPORATION, | ) ) ) C.A. No. _____ |
| Defendant. | ) ) ) ) ) ) |

## COMPLAINT

Plaintiff 786 Challenger St. LLC ("786 Challenger"), by and through its undersigned attorneys, brings this complaint against Defendant Bombardier Aerospace Corporation ("Bombardier") and alleges as follows:

## INTRODUCTION

1. This action arises due to Bombardier's improper refusal to release to 786 Challenger a $500,000 escrow that 786 Challenger deposited in good faith during negotiations (the "Escrow Deposit") to potentially purchase a pre-owed aircraft (the "Aircraft") from Bombardier.

2. On February 10, 2020, 786 Challenger made a written offer for the potential purchase of the Aircraft. The offer stated the terms on which 786 Challenger was willing to complete the transaction. One of the material terms proposed by 786 Challenger required Bombardier to deliver the Aircraft to Glacier Jet Center at Glacier Park International Airport, Kalispell, Montana (the "Delivery Location").

3. Bombardier responded the next day. While it signed the document 786 Challenger had sent, Bombardier unequivocally *rejected* the material term related to the Delivery Location,

writing: "Bombardier cannot close in Montana." Bombardier's rejection means that "acceptance"—an essential element for contract formation—never occurred. 786 Challenger also never agreed in a signed writing to the alternate Delivery Location in Windsor, Connecticut, which Bombardier had offered, or any other mutually-agreed upon Delivery Location. Thus, no binding agreement for the purchase of the Aircraft was ultimately reached by the parties, and 786 Challenger is entitled to the return of the Escrow Deposit.

4. Even if a binding contract had been formed—none was—it would have required delivery of the Aircraft no later than March 20, 2020, and in Montana or another location agreed to and memorialized in a written instrument signed by 786 Challenger. It is undisputed that Bombardier did not deliver the Aircraft by March 20, 2020. It is also undisputed that Bombardier never delivered the Aircraft to Montana, or to any other location that 786 Challenger agreed to. Bombardier's failure to do so entitled 786 Challenger to terminate any agreement (if one was formed), and to have the Escrow Deposit returned to it.

5. Despite these facts, Bombardier is steadfast in its unjustified refusal to release the Escrow Deposit. Accordingly, 786 Challenger brings this lawsuit to enforce its rights.

## THE PARTIES

6. Plaintiff 786 Challenger St. LLC was a domestic limited liability company that was organized under the laws of California and had a principal place of business located at 2995 Woodside Road 400-385, Woodside, California 94062.

7. Defendant Bombardier Aerospace Corporation is a corporation that, on information and belief, is organized under the laws of Delaware with its principal place of business located at 1 Learjet Way Wichita, KS 67209.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because it is a civil action between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. Defendant Bombardier is subject to personal jurisdiction in this District because it is incorporated in, and thus a citizen of, the State of Delaware.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Bombardier resides in Delaware.

## FACTUAL ALLEGATIONS

**A. 786 Challenger's Offer To Potentially Purchase The Aircraft.**

11. In early 2020, the parties were negotiating the potential sale of the Aircraft from Bombardier to 786 Challenger for approximately $17,000,000. In connection with those negotiations, the parties signed a Letter of Intent regarding the potential purchase (the "LOI"). Pursuant to the LOI, on January 24, 2020, 786 Challenger wired a $500,000 deposit to be held by an escrow agent, AIC Title Service. This Escrow Deposit was fully refundable to 786 Challenger in the event that the parties did not later reach a binding, written contract for the purchase of the Aircraft.

12. The parties negotiations thereafter continued, and there were a number of material terms discussed in addition to the price of the Aircraft. On February 10, 2020, 786 Challenger sent Bombardier a proposed Pre-Owned Aircraft Purchase Agreement containing those terms on which it was willing to proceed (the "Potential Agreement").

13. The Potential Agreement specified the timeline on which delivery of the Aircraft was required. It stated that Bombardier must "present the Aircraft" to 786 Challenger "no later than March 20, 2020 (and not earlier than March 18, 2020)."

14. The Potential Agreement also specified the "Delivery Location" at which Bombardier was required to present the Aircraft. It stated that Bombardier must "present the Aircraft to [786

Challenger] for [786 Challenger's] acceptance and delivery at the Glacier Jet Center at Glacier Park International Airport, Kalispell Montana (the 'Delivery Location')".

15. The Potential Agreement was clear and unambiguous on these points.

16. To ensure the parties would only be held to the terms of a final, written contract—rather than be at the mercy of allegations regarding oral or informal statements made during or after negotiations—the Potential Agreement also had an "integration" clause. It stated any final, written document would "constitute the entire agreement between [Bombardier] and [786 Challenger] and supersede and cancel all prior representations, alleged warranties, statements, negotiations, drafts, undertakings, letters, acceptances, agreements, understandings, contracts and communications, whether oral or written, with respect to or in connection with the subject matter hereof."

17. To further protect itself from any potential argument that 786 Challenger had agreed to terms or modifications not included in an integrated, final agreement, the Potential Agreement stated that it could "only be amended or changed by a written instrument signed by authorized representatives of both parties."

**B. Bombardier Rejects 786 Challenger's Offer To Potentially Purchase The Aircraft.**

18. On February 11, 2020, Bombardier rejected the terms of the Potential Agreement offered by 786 Challenger.

19. Specifically, while Bombardier responded by sending a purportedly "countersigned" purchase agreement, it crossed out in handwritten ink the Delivery Location that 786 Challenger had offered. Instead of Glacier Park International Airport in Kalispell, Montana, the document Bombardier signed and returned to 786 Challenger listed in handwritten ink "Bradley International Airport in Windsor Locks, CT" as the Delivery Location.

20. In its cover email, Bombardier made clear that this was not an immaterial change. Rather, Bombardier stated that its acceptance to any contract was conditional on 786 Challenger agreeing to its proposed change in Delivery Location, writing: "Bombardier *cannot* close in Montana" (emphasis added).

21. By revising the Potential Agreement and making its acceptance conditional on 786 Challenger's agreement to Bombardier's proposed revision, Bombardier rejected 786 Challenger's offer, and instead sent a counter-offer.

22. At no point in time did any authorized representative of 786 Challenger sign, initial, or otherwise agree to Bombardier's counter-offer changing the Delivery Location for the Aircraft to Windsor Locks, Connecticut.

23. At no point in time did Bombardier agree to the Kalispell, Montana Delivery Location that 786 Challenger had offered in the Potential Agreement.

24. And at no point in time did the parties otherwise agree, in any written instrument signed by authorized representatives for both parties, to any other alternative Delivery Location.

25. Accordingly, no binding contract was formed by the parties.

**C. Bombardier Fails To Deliver The Aircraft On The Timeline Or At The Location The Parties Had Discussed.**

26. Upon Bombardier's rejection of the Delivery Location offered by 786 Challenger, 786 Challenger's attorney responded to Bombardier indicating the parties may be able to later agree to an alternate Delivery Location. Notably, however, it was not until March 2, 2020 that 786 Challenger itself learned Bombardier had rejected the Delivery Location in the Potential Agreement, and had sought to unilaterally replace it with a handwritten amendment allowing delivery in Connecticut. 786 Challenger never accepted this counter-offer; as described above no authorized representative of 786 Challenger ever signed, initialed, or otherwise agreed to Bombardier's counter-

offer that the Delivery Location could be Windsor Locks, Connecticut, nor did 786 Challenger otherwise agree to that location for delivery of the Aircraft.

27. The parties nevertheless continued discussions in an effort to potentially reach mutually-agreeable terms for the purchase and delivery of the Aircraft. Despite those efforts, by March 20, 2020—the delivery deadline for delivery that 786 Challenger had included in the Proposed Agreement—Bombardier had not delivered the Aircraft to 786 Challenger, much less at a location mutually agreeable to both parties.

28. Accordingly, on March 25, 786 Challenger sent a notice to Bombardier. It reserved all of 786 Challenger's rights, and described how Bombardier had failed to timely present the Aircraft in the manner contemplated by the Proposed Agreement.

29. Bombardier responded on March 30. It did not contest these facts. Rather, it asserted (among other things) that Bombardier was "work[ing] diligently" to "cure" these deficiencies. Bombardier asserted that it was "entitled to act to cure [the deficiencies] at any time prior to April 4, 2020, at the earliest, or April 6, 2020, at the latest."

30. As 786 Challenger's attorneys had described two days earlier, however, the failure to deliver the Aircraft by a specified date was a defect that could not be "cured," even if Section 9.2 of the Proposed Agreement may have allowed, under certain circumstances, Bombardier a ten-day window to cure certain other potential material breaches. 786 Challenger reiterated this in response to Bombardier's March 30, 2020 letter.

31. One day later, on March 31, Bombardier moved the Aircraft to Bradley International Airport in Windsor Locks, Connecticut, the location Bombardier had handwritten into the Potential Agreement but which 786 Challenger never agreed to, in writing or otherwise.

32. Bombardier did not, however, deliver the Aircraft to the Glacier Park International Airport in Kalispell, Montana, either by April 6, 2020 or at any other point in time. Nor did Bombardier otherwise deliver the Aircraft to any other location that both parties had agreed to in a written instrument signed by their authorized representatives.

33. Accordingly, on April 6, 2020, 786 Challenger sent Bombardier a notice demanding the return of the Escrow Deposit, and otherwise reserving all of its rights. 786 Challenger described how Bombardier failed to "present the Aircraft 'no later than March 20, 2020,'" and how "regardless of timing, [Bombardier] also failed to deliver the Aircraft to the Delivery Location" specified in the "version of the Agreement executed by [786 Challenger]," which "defined Glacier Park International Airport in Kalispell, Montana as the Delivery Location." 786 Challenger went on to describe how, while Bombardier had sought to unilaterally change the Delivery Location, "[n]o authorized representative of [786 Challenger] ever signed a writing changing the Delivery Location to Connecticut."

34. On April 8, 786 Challenger forwarded this letter to AIC Title Service, the escrow agent holding the Escrow Deposit, requesting the return of the Escrow Deposit.

35. On April 10, AIC Title Service wrote back to 786 Challenger, stating that in addition to receiving 786 Challenger's request, it had received "notice from [Bombardier] stating [786 Challenger] is in default and asking for the deposit." The escrow agent accordingly declined to return the Escrow Deposit to either 786 Challenger or Bombardier.

36. This action follows, seeking the return of the Escrow Deposit to 786 Challenger.

## CAUSES OF ACTION

### COUNT I – Declaratory Judgment Of No Binding Contract
### (Against Bombardier)

7

37. 786 Challenger repeats and incorporates the allegations in paragraphs 1 through 36 as if set forth fully herein.

38. No valid, binding contract requiring 786 Challenger to purchase the Aircraft from Bombardier was formed, as there was never a meeting of the minds with respect to the material terms of any agreement, including the Delivery Location for the Aircraft.

39. While 786 Challenger made an written offer to potentially purchase the Aircraft from Bombardier, Bombardier rejected that offer.

40. While Bombardier made a counter-offer to 786 Challenger for the potential purchase of the Aircraft, 786 Challenger never agreed to the counter-offer from Bombardier.

41. The parties therefore never reached a valid, binding agreement for the purchase of the Aircraft.

42. An actual and justiciable controversy exists between 786 Challenger and Bombardier because, despite the above, Bombardier has refused to permit the release and return of the Escrow Deposit to 786 Challenger.

43. Declaratory relief will resolve the dispute between the parties and determine their respective rights and obligations to the return of the Escrow Deposit.

### COUNT II – Breach of Contract (In the Alterative)
### (Against Bombardier)

44. 786 Challenger repeats and incorporates the allegations in paragraphs 1 through 43 as if set forth fully herein.

45. In the event that the Court finds the Potential Agreement was a valid and binding contract, Bombardier is liable for breaching that contract and 786 Challenger is still entitled to the return of the Escrow Deposit.

46.     Bombardier materially breached and/or otherwise failed to perform its obligations under Section 3.5 of the Potential Agreement by, among other things, failing to (1) present the Aircraft to 786 Challenger no later than March 20, 2020; and (2) failing to present the Aircraft, at any point in time, for 786 Challenger's acceptance and delivery at the Glacier Jet Center at Glacier Park International Airport, Kalispell, Montana, or at any other location mutually agreed to by the parties.

47.     Until Bombardier materially breached the Potential Agreement, as described above, 786 Challenger had complied in all material respects with its terms.

48.     Pursuant to Section 9.3 of the Potential Agreement, because of Bombardier's breach, 786 Challenger is entitled to terminate the Potential Agreement and have the Escrow Deposit returned to it.

## PRAYER FOR RELIEF

WHEREFORE, 786 Challenger prays for relief and judgment against Bombardier as follows:

A.     On Count I, a declaration that no binding agreement for the purchase of the Aircraft was formed between 786 Challenger and Bombardier, and that 786 Challenger is accordingly entitled to the return of the Escrow Deposit;

B.     In the alternative, if the relief requested for Count I is not granted, on Count II an order awarding 786 Challenger its damages, including the return of the Escrow Deposit, due to Bombardier's breach of the Potential Agreement;

C.     Pre-judgment interest, attorneys' fees, and other costs and disbursements associated with this action as permitted by law; and

D.     Such further and other relief as the Court may deem to be just and proper.

DATED: July 7, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas W. Briggs, Jr.*
Thomas W. Briggs, Jr. (#4076)

OF COUNSEL:

Zi-Xiang Shen (#6072)
1201 North Market Street

David E. Myre (pro hac vice pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
davidmyre@quinnemanuel.com

Wilmington, DE 19801
(302) 658-9200
tbriggs@mnat.com
zshen@mnat.com

*Attorneys for Plaintiff*